## IN THE UNITED STATES COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## VALDOSTA DIVISION

| | | |
|---|---|---|
| CHEYENNE COLSON, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| V. | ) | CASE NO. 7:23-CV-00081 |
| | ) | |
| LASALLE SOUTHEAST, LLC | ) | |
| d/b/a IRWIN COUNTY DETENTION | ) | |
| CENTER, AND | ) | |
| MICHAEL WILLIAMS. | ) | |
| | ) | |
| DEFENDANTS. | ) | |

### PLAINTIFF CHEYENNE COLSON'S AMENDED COMPLAINT

**COMES NOW**, Plaintiff Cheyenne Colson ("Ms. Colson" or "Plaintiff"), by

and through undersigned counsel, files her Amended Complaint against Defendants

LaSalle Southeast, LLC d/b/a Irwin County Detention Center and Michael Williams

(collectively "Defendants"), showing the Court as follows:

### I. JURISDICTION AND VENUE

1.

Defendant LaSalle Southeast, LLC d/b/a Irwin County Detention Center

("ICDC") is a limited liability company organized under Georgia law and maintains

an office located in Irwin County at Irwin County Detention Center, 132 Cotton

Drive, Ocilla, Georgia 31774. ICDC's registered agent is National Registered Agents, Inc., 289 S. Culver Street, Lawrenceville, Georgia 30046.

2.

Defendant Michael Williams ("Williams"), during the relevant timeframes, worked at ICDC as a Lieutenant and was Ms. Colson's direct supervisor. Defendant Williams' last known address is 443 Fitzgerald Hwy., Ocilla, Georgia 31774.

3.

A substantial part of the tortious acts, omissions, injuries, and violations of law described in this Complaint occurred in Irwin County, Georgia.

4.

This Court has personal jurisdiction over the parties and subject matter jurisdiction over this dispute, and venue is proper in this Court.

## II. ADMINISTRATIVE EXHAUSTION

5.

On or about April 11, 2021, Ms. Colson timely filed a charge of sex discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") against ICDC.

6.

On or about July 22, 2022, the EEOC issued Ms. Colson a Notice of Right to Sue.

7.

On or about October 3, 2022, Ms. Colson filed her Complaint in the Superior Court of Irwin County.

8.

On or about July 14, 2023, ICDC filed a Notice of Removal with this Court. Subsequently, on or about July 17, 2023, ICDC filed a Notice of Filing Notice of Removal with the Irwin County Superior Court.

9.

Ms. Colson has fully complied with all prerequisites to jurisdiction in this Court under Title VII.

### III. FACTUAL ALLEGATIONS

10.

Beginning on July 26, 2021, Ms. Colson was employed by ICDC as an Officer on the "D" shift, where she was supervised by Defendant Williams, who was employed by ICDC as a Lieutenant.

11.

On August 15, 2021, Defendant Williams messaged, "What's up" to Ms. Colson on social media. Because the message did not pertain to work, Ms. Colson did not respond.

12.

On August 16, 2021, at work, Defendant Williams grabbed Ms. Colson's arm in the hallway when they were alone. On that same day, while they were alone, Defendant Williams told Ms. Colson, "you look very cute, so cute," as he commented on Ms. Colson's hair.

13.

On August 17, 2021, Defendant Williams took a picture of Ms. Colson while she was working in the Alpha dorms.

14.

Later, on the same shift, on August 17, 2021, Defendant Williams, in Ms. Colson's presence, showed the picture he took of Ms. Colson to another officer and stated, "look how bored she looks in Alpha."

15.

At the end of the same shift, on August 17, 2021, in the front lobby when Ms. Colson was signing out for the day, Defendant Williams approached Ms. Colson and grazed the back of Ms. Colson's and another female officer's necks with the antennae of his radio.

16.

On August 19, 2021, Defendant Williams messaged Ms. Colson on social media, "good morning," with no discussion about anything work related. Ms. Colson did not respond.

17.

On August 20, 2021, when Ms. Colson's arm accidentally switched off a light at work while she was walking down the stairs, Defendant Williams stated, "it's because of that big ass you have."

18.

Later, during that same shift, on August 20, 2021, Defendant Williams told Ms. Colson that he knows what time she normally wakes up because he watches her Facebook page.

19.

At the end of her shift, on August 20, 2021, Ms. Colson mentioned to another officer that she recently quit nicotine and needed to start wearing a patch to work if she could get it approved. In response, Defendant Williams interjected himself into the conversation and stated, "oh, don't make me do a full body search, Colson."

20.

On August 21, 2021, Defendant Williams messaged Ms. Colson again on Facebook. As with Defendant Williams' other messages, Ms. Colson did not respond. Thereafter, Ms. Colson unfriended Defendant Williams on Facebook.

21.

On August 22, 2021, Ms. Colson submitted a written complaint to ICDC's Director of Human Resources regarding the foregoing facts concerning incidents of sexual harassment by Defendant Williams, which occurred on August 15, 16, 17, 19, 20, and 21, 2021, and her loss of overtime.

22.

From the date of Mr. Colson's complaint (i.e., August 22, 2021) until September 1, 2021, no one at ICDC contacted her regarding an investigation into her allegations.

23.

During the week of August 22, 2021, Ms. Colson was informed that she could not work overtime on any night shift, and that she was being removed from the "D" shift.

24.

ICDC removed Ms. Colson's ability to work overtime as a direct result of her filing a complaint of sexual harassment against her supervisor, Defendant Williams.

25.

It soon became apparent that ICDC's reason for changing Ms. Colson's shift and overtime was a pretext to retaliate against her, particularly because Defendant Williams was not effectively kept away.

26.

On August 27 and 28, 2021, as Ms. Colson was coming into work, Defendant Williams waited outside of ICDC for Ms. Colson. After Ms. Colson pulled into the facility, Defendant Williams parked up front and near the door, trying to get Ms. Colson's attention so that she knew he was watching her walk into work.

27.

Ms. Colson had not told anyone, outside of HR, about her complaint; however, on August 29, 2021, when Ms. Colson was stationed in the Fox dorms, Ms. Colson began hearing inmates talking about her, Defendant Williams, and the investigation.

28.

The inmates' comments on August 29, 2021 included, "I heard what happened to you, girl," "you gone let everyone touch up on you but me?", and other comments detailed in Ms. Colson's complaint to HR that clearly indicated that the inmates knew about her complaint against Defendant Williams.

29.

On September 2, 2021, Ms. Colson submitted a second complaint to HR, which reported the above incidents that occurred after her initial complaint.

30.

Mr. Colson's second complaint to HR also stated that six months prior to her initial complaint, another female officer complained of sexual harassment from Defendant Williams that included inappropriate comments and grabbing her body. Following this female officer's complaints, ICDC took no action to remove Defendant Williams from the workplace or change his behavior to protect others from the same experience.

31.

On October 14, 2021, when Ms. Colson was stationed in the Fox dorms, one of the inmates had an argument with a nurse during pill call, and it was decided that backup needed to be called to handle the situation.

32.

Sergeant Carter (another supervisor) was scheduled to oversee Ms. Colson's shift on October 14, 2021.

33.

When Ms. Colson radioed for backup, Ms. Colson believed that Sergeant Carter would respond to her call; however, Defendant Williams was the person who responded to Ms. Colson on the radio.

34.

Because Defendant Williams responded to Ms. Colson on the radio and indicated he would be responding to her call for backup, Ms. Colson removed herself from the Fox dorms and went to intake for her safety.

35.

Ms. Colson was later informed that Sergeant Carter, knowing about the pending investigation, went to Burger King and left Defendant Williams in charge.

36.

After Ms. Colson discovered that Defendant Williams was left in charge and was forced to retreat to safety, ICDC's only solution to the threat to Ms. Colson's safety was for Ms. Colson to leave her shift.

37.

Ms. Colson was not compensated for her lost shift on October 14, 2021.

38.

On October 14, 2021, Ms. Colson submitted a third complaint to ICDC's HR, reporting the ongoing harassment, including Defendant Williams' continued presence in her work environment and her retaliatory loss of pay.

39.

On October 15, 2021, Ms. Colson was called to a meeting with the Warden, Deputy Warden, and Major Battel.

40.

During the meeting, when Ms. Colson asked why Defendant Williams was called in on her prior shift, the Warden replied, "As of right now, Lieutenant Williams is still a Lieutenant, and you are just an officer. We have to do what is needed for the facility."

41.

At the October 15, 2021 meeting, the Warden asked Ms. Colson if she had been physically touched by Defendant Williams since her complaint. Ms. Colson explained that, although she had not been physically touched by Defendant Williams since her complaint, she remained concerned for her safety.

42.

After Ms. Colson asked the Warden, Deputy Warden, and Major questions during the meeting, the Warden pulled out three write-ups or statements that staff had purportedly written about Ms. Colson. Ms. Colson was then told that she was under investigation.

43.

Prior to receiving these writeups, Ms. Colson had never received a writeup, been late to work, or called out without approved sick leave.

44.

On October 27, 2021, Ms. Colson was called into Human Resources by the Major and Captain, and told that the company was going through mass layoffs.

45.

During this meeting on October 27, 2021, Ms. Colson was informed by Human Resources that the only reason she was not being laid off was due to the investigation.

46.

At this point, reasonably expecting that she would be targeted for continued retaliation, Ms. Colson had no choice but to submit her two-week notice of resignation.

47.

Through its failure to remove Defendant Williams from Ms. Colson's work environment, continued trivialization of Ms. Colson's complaints, consistent defense of Defendant Williams, and singling out Ms. Colson explicitly due to her complaint, ICDC demonstrated that Ms. Colson's safety was not a priority and that she would not receive any meaningful support or protection.

48.

On November 2, 2021, while Ms. Colson was out of the facility on a medical run, Lieutenant Foster requested that Ms. Colson call her.

49.

When Ms. Colson returned the call, Defendant Williams (not Lieutenant Foster) answered the phone. Accordingly, Ms. Colson contacted Lieutenant Foster to report Defendant Williams answering her call instead of Lieutenant Foster. Lieutenant Foster then told Ms. Colson that ICDC did not have anyone else aside from Defendant Williams to come in and, at that point, gave Ms. Colson permission to leave her shift.

50.

On that same day, after Ms. Colson's shift, she was informed by a co-worker that Defendant Williams was speaking with another Lieutenant about Ms. Colson's complaint in front of inmates.

51.

The next day, November 3, 2021, Lieutenant Foster stated that the Warden asked why Ms. Colson left her shift, but that he was only concerned about whether Ms. Colson had the appropriate approval to leave. The Warden was not concerned about Defendant Williams' continued presence and hostility in Ms. Colson's work environment.

52.

On November 5, 2021, Ms. Colson was informed that she would not be permitted to use paid time off for the days that she was forced to leave due to Defendant Williams' presence (i.e., October 14 and November 2) in her work area, and Ms. Colson's pay would be docked for her absences.

## IV. CAUSES OF ACTION

### COUNT ONE
**Sex Discrimination in Violation of Title VII of the Civil Rights Act of 1964**
**42 U.S.C. § 2000et al., Hostile Work Environment Harassment**
*Against ICDC*

53.

Plaintiff repeats and realleges the foregoing Paragraphs 1 through 52 as if fully set forth herein.

54.

Defendant Williams worked as a Lieutenant at ICDC and directly supervised Ms. Colson, who worked as an Officer at ICDC.

55.

As alleged herein, Defendant Williams subjected Ms. Colson to pervasive, hostile, and sexually aggressive language and behavior, including unwanted sexual propositioning and advances, to the point that Ms. Colson feared for her safety.

- 14 -

56.

On August 22, 2021, Ms. Colson submitted a written complaint to ICDC's
Human Resources Director that detailed Defendant Williams' acts of sexual
harassment toward her on August 15, 17, 19, 20, and 21, 2021.

57.

From the date of her complaint (i.e., August 22, 2021), no one contacted Ms.
Colson until September 1, 2021 concerning an investigation.

58.

While Ms. Colson waited for a response to her sexual harassment complaint,
Defendant Williams, who was still a Lieutenant with ICDC and her direct supervisor,
continued to engage in hostile and intimidating behavior toward Ms. Colson.

59.

During the week of her August 22, 2021 complaint to HR concerning
Defendant Williams' sexual harassment, Ms. Colson was removed from the "D"
shift and prohibited from working overtime during nightshifts.

60.

After Defendant Williams harassed Ms. Colson in the ICDC parking lot on
August 27 and 28, 2021 and told inmates about Ms. Colson's sexual harassment
complaints, which resulted in sexually harassing language targeted at her from the

inmates, Ms. Colson submitted a second complaint to ICDC's HR director on September 2, 2021.

61.

On October 14, 2021, Ms. Colson submitted a third complaint to ICDC's HR director after another supervisor, Sergeant Carter, despite knowing there was a pending investigation concerning Defendant Williams' behavior toward Ms. Colson, left Defendant Williams in charge of their shift, resulting in Defendant Williams responding to Ms. Colson's radio call for backup. When Defendant Williams was the only supervisor available to respond to calls for backup, Ms. Colson had no choice but to leave the shift for her safety.

62.

On October 15, 2021, the Warden, Deputy Warden, and Major called Ms. Colson to a meeting where they told her, "As of right now, Lieutenant Williams is still a Lieutenant, and you are just an officer. We have to do what is needed for the facility," and pulled out three writeups or statements that staff had purportedly written about Ms. Colson.

63.

Ms. Colson was placed under investigation by ICDC, even though she never had any prior writeups or other discipline.

64.

ICDC placed Ms. Colson in an intolerable position by refusing to take effective action to remedy Defendant Williams' harassment.

65.

During mass layoffs, Ms. Colson was informed by ICDC's HR department that she was only being retained because of the ongoing investigation.

66.

Because of ICDC's history of retaliation towards its female employees, including acts of retaliation that placed Ms. Colson's safety in jeopardy, Ms. Colson had no choice but to resign her employment.

67.

Ms. Colson suffered damages because of ICDC's unlawful discriminatory actions, including emotional distress, past and future wages and benefits, and the costs of bringing this action.

68.

ICDC intentionally violated Ms. Colson's rights under Title VII, with malice or reckless indifference, and, as a result is liable for punitive damages.

## COUNT TWO
**Sex Discrimination in Violation of Title VII of the Civil Rights Act of 1964
42 U.S.C. § 2000et al., Discrimination Based on Sex**
*Against ICDC*

69.

Plaintiff repeats and realleges the foregoing Paragraphs 1 through 68 as if fully set forth herein.

70.

ICDC constructively discharged Ms. Colson based on her sex (i.e., female).

71.

Ms. Colson was taken off the "D" shift and deprived of overtime opportunities, while Defendant Williams did not lose any pay or meaningful conditions of employment following complaints about his behavior.

72.

Ms. Colson was required to lose shifts without pay to remove Defendant Williams from her work environment, while Defendant Williams was not deprived of any pay.

73.

Defendant Williams was treated more favorably than Ms. Colson based on his sex.

- 18 -

74.

Ms. Colson suffered damages because of Defendants' unlawful discriminatory actions, including emotional distress, past and future wages and benefits, and the costs of bringing this action.

75.

Defendants intentionally violated Ms. Colson's rights under Title VII, with malice or reckless indifference, and, as a result is liable for punitive damages.

## COUNT THREE
### Retaliation in Violation of Title VII of the Civil Rights Act of 1964
### 42 U.S.C. § 2000e et al.
*Against ICDC*

76.

Plaintiff repeats and realleges the foregoing Paragraphs 1 through 75 as if fully set forth herein.

77.

Ms. Colson complained of sexual harassment by her supervisor, Defendant Williams, on August 22, September 2, and October 14, 2021.

78.

During the week of August 22, 2021, after Ms. Colson filed her first sexual harassment complaint, Ms. Colson lost the ability to work overtime when she was removed from the "D" shift.

79.

Although ICDC told Ms. Colson that she was removed from the "D" shift to keep her away from Defendant Williams, he continued to be present at Ms. Colson's work environment; therefore, it is apparent that ICDC's reason for changing Ms. Colson's shift and removing her overtime was a pretext to retaliate against her.

80.

On August 29, 2021, Ms. Colson began hearing inmates talking about her, Defendant Williams, and the investigation, which included, "I heard what happened to you, girl," "you gone let everyone touch up on you but me?", and other comments detailed in Ms. Colson's complaint to HR that clearly indicated that the inmates knew about her complaint concerning Defendant Williams.

81.

On September 2, 2021, Ms. Colson reported her retaliatory loss of overtime to ICDC's HR department; however, no action was taken.

82.

On September 2, 2021, Ms. Colson reported to ICDC the retaliatory disclosure of her complaints to the inmates; however, no action was taken by ICDC.

83.

On October 14, 2021, when Ms. Colson called for backup, Defendant Williams responded to the call, although Sergeant Carter was overseeing the shift. ICDC's only response to this occurring was for Ms. Colson to leave the shift, and Ms. Colson was not compensated for the shift and pay she lost.

84.

On October 14, 2021, Ms. Colson reported the retaliatory loss of pay and Defendant Williams' response to her call for backup; however, no action was taken by ICDC.

85.

On October 15, 2021, Ms. Colson was called to a meeting with the Warden, Deputy Warden, and Major Battel, where Ms. Colson was told, "As of right now, Lieutenant Williams is still a Lieutenant, and you are just an officer. We have to do what is needed for the facility."

86.

During the October 15, 2021 meeting, the Warden pulled out three writeups or statements that staff had purportedly written about Ms. Colson from the prior shift, and Ms. Colson was then told that she was under investigation.

87.

Prior to receiving these writeups, Ms. Colson had never received a writeup, been late, or called out without approved sick leave. ICDC never presented her with any writeups until after the October 14, 2021 shift that Defendant Williams was called in to supervise, which was done within weeks of Ms. Colson's complaints to HR.

88.

On October 27, 2021, Ms. Colson was called into HR by the Major and Captain and told that the company was going through mass layoffs. During this meeting, Ms. Colson was informed that the only reason she was not being laid off was due to the investigation.

89.

After Ms. Colson was informed that the investigation was the only reason she was not being laid off with her co-workers, Ms. Colson reasonably expected that she would be targeted for continued retaliation and had no meaningful choice but to leave her employment.

90.

Through its failure to remove Defendant Williams from Ms. Colson's work environment, continued trivialization of Ms. Colson's complaints, consistent

defense of Defendant Williams, and singling out Ms. Colson explicitly due to her complaint, ICDC demonstrated that Ms. Colson's safety was not a priority and that she would not receive any meaningful support or protection from ICDC.

91.

On November 2, 2021, while Ms. Colson was out of the facility on a medical run, Lieutenant Foster asked that Ms. Colson call her.

92.

When Ms. Colson returned the call, Defendant Williams (not Lieutenant Foster) answered the phone. When Ms. Colson contacted Lieutenant Foster to report Defendant Williams answering her call (instead of Lieutenant Foster), she told Ms. Colson that ICDC did not have anyone else aside from Defendant Williams to come in and, at that point, gave Ms. Colson permission to leave her shift.

93.

On that same day, after Ms. Colson's shift, she was informed by a co-worker that Defendant Williams was speaking with another Lieutenant about Ms. Colson's complaint in front of inmates.

94.

The next day, November 3, 2021, Lieutenant Foster stated that the Warden asked why Ms. Colson left her shift, but that he was only concerned about whether

Ms. Colson had the appropriate approval to leave. The Warden was not concerned about Defendant Williams' continued presence and hostility in Ms. Colson's work environment.

95.

On November 5, 2021, Ms. Colson was informed that she would not be permitted to use paid time off for the days that she was forced to leave due to Defendant Williams' presence in her work area (i.e., October 14 and November 2), and her pay would be docked for said absences.

96.

Ms. Colson was constructively discharged from ICDC in retaliation for her actions protected by Title VII, including making a good faith report of unlawful sexual harassment to ICDC.

97.

Upon information and belief, Defendant Williams was treated more favorably than Ms. Colson by ICDC, as he did not lose any pay or opportunities with ICDC and was treated more favorably by management who considered protecting him "needed for the facility."

98.

Plaintiff suffered damages because of ICDC's unlawful retaliatory actions, including emotional distress, the loss of past and future wages and benefits, and the costs of bringing this action.

99.

ICDC intentionally violated Plaintiff's rights under Title VII with malice or reckless indifference and, as a result, is liable for punitive damages.

## COUNT FOUR
### Assault
*Against Defendant Williams*

100.

Plaintiff repeats and realleges Paragraphs 1 through 99 as if fully set forth herein.

101.

Defendant Williams, by his persistent and hostile sexual harassment, both inside and outside of the workplace, placed Ms. Colson in reasonable apprehension of immediate harmful contact both outside of work and inside the workplace.

102.

Defendant Williams stalked Ms. Colson on social media and in the parking lot at work, and disclosed her sexual harassment complaint against him to the

inmates at the ICDC facility, resulting in the inmates making sexual comments towards Ms. Colson.

103.

On August 16, 2021, at work, Defendant Williams grabbed Ms. Colson's arm in the hallway when they were alone. On that same day, while they were alone, Defendant Williams told Ms. Colson, "you look very cute, so cute," as he commented on Ms. Colson's hair.

104.

On August 17, 2021, in the front lobby when Ms. Colson was signing out for the day, Defendant Williams approached Ms. Colson and grazed the back of Ms. Colson's and another female officer's necks with the antennae of his radio.

105.

Defendant Williams intended to cause and did cause Ms. Colson to suffer apprehension of an immediate harmful contact.

106.

Ms. Colson was, at all relevant times, aware of Defendant Williams' actions, intentions, and ability to injure her.

107.

Ms. Colson sustained severe emotional injuries because of Defendant Williams' assault.

## COUNT FIVE
### Intentional Infliction of Emotional Distress
*Against Defendant Williams*

108.

Plaintiff repeats and realleges Paragraphs 1 through 107 as if fully set forth herein.

109.

Defendant Williams intentionally stalked Ms. Colson and made persistent and hostile demands for a sexual relationship, both inside and outside of the workplace, placed Ms. Colson in reasonable apprehension of immediate harmful contact both outside of work and inside the workplace, where Ms. Colson worked as a subordinate employee to him.

110.

Defendant Williams' conduct was extreme and outrageous.

111.

Defendant Williams' conduct toward Ms. Colson was malicious, willful, and wanton.

112.

Ms. Colson suffered severe emotional distress as a direct and proximate result of Defendant Williams' conduct.

## COUNT SIX
### Negligent Retention and Supervision
*Against Defendant ICDC*

113.

Plaintiff repeats and realleges Paragraphs 1 through 112 as if fully set forth herein.

114.

ICDC was responsible for the supervision and retention of employees, including Defendant Williams.

115.

Ms. Colson notified ICDC on multiple occasions that she was being placed in immediate fear for her safety because of the above-stated tortious conduct by Defendant Williams.

116.

ICDC knew that another female officer complained of sexual harassment from Defendant Williams that included inappropriate comments and grabbing her body just six months prior to Ms. Colson's complaints. Following this female officer's

complaints, ICDC took no action to remove Defendant Williams from the workplace or change his behavior to protect others from the same experience.

117.

ICDC took no meaningful action to remedy Ms. Colson's work environment.

118.

Because ICDC failed to take effective action to remedy Defendant Williams' tortious conduct toward Ms. Colson, Ms. Colson was subject continued assaults and intentional infliction of emotional distress by Defendant Williams.

119.

Ms. Colson sustained injury because of ICDC's negligence in retaining and/or failing to properly supervise Defendant Williams after being informed of his propensities on multiple occasions, and Plaintiff's injuries should have been foreseen as the natural and probable consequence of retaining and/or failing to properly supervise Defendant Williams.

**COUNT SEVEN**
**PUNITIVE DAMAGES**
*Against All Defendants*

120.

Plaintiff repeats and realleges Paragraphs 1 through 119 as if fully set forth herein.

121.

The foregoing allegations demonstrate that Defendants showed willful misconduct, malice, wantonness, oppression, or the entire want of care which would raise the presumption of conscious indifference to the consequences.

122.

Defendants acted with the specific intent to cause harm such that there is no limitation regarding the amount which may be awarded as punitive damages.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Ms. Colson respectfully requests judgment as follows:

A. Award Ms. Colson general and special damages against Defendants in excess of $50,000;

B. Award Ms. Colson for her past and future loss of wages and benefits, plus interest;

C. Award to Ms. Colson liquidated damages incurred in connection with this action, equal to the sum amount of backpay and interest;

D. Award to Ms. Colson all costs and reasonable attorneys' fees incurred in connection with this action;

E. Award to Ms. Colson compensatory damages;

F. Award to Ms. Colson punitive damages; and

G. Grant such additional relief as the Court deems just and proper.

## **JURY DEMAND**

Ms. Colson demands a trial by jury on all claims.

Respectfully submitted this 2nd day of April, 2024.

/s/ *Justin Connell*
Justin B. Connell
Georgia Bar No. 142692
Joseph B. Lee
Georgia Bar No. 320919
Andrew C. Suarez
Georgia Bar No. 895071

**ELARBEE, THOMPSON, SAPP & WILSON, LLP**
800 International Tower
229 Peachtree Street, N.E.
Atlanta, Georgia 30303
(404) 659-6700 (telephone)//(404) 222-9718 (facsimile)
connell@elarbeethompson.com
lee@elarbeethompson.com
suarez@elarbeethompson.com
*Counsel for Plaintiff*

**IN THE UNITED STATES COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

CHEYENNE COLSON,                    )
                                    )
         PLAINTIFF,                 )
                                    )
V.                                  )          CASE NO. 7:23-CV-00081
                                    )
LASALLE SOUTHEAST, LLC              )
d/b/a IRWIN COUNTY DETENTION        )
CENTER, AND                         )
MICHAEL WILLIAMS.                   )
                                    )
         DEFENDANTS.                )

## CERTIFICATE OF SERVICE

I hereby certify that I have served the following **PLAINTIFF CHEYENNE COLSON'S AMENDED COMPLAINT**, by filing the same with the Court's electronic filing system, which will automatically send e-mail notification of filing to all counsel of record.

Respectfully submitted, this 2nd day of April, 2024.

/s/ Justin Connell
Justin B. Connell
Georgia Bar No. 142692
Joseph B. Lee
Georgia Bar No. 320919
Andrew C. Suarez
Georgia Bar No. 895071

**ELARBEE, THOMPSON, SAPP & WILSON, LLP**
800 International Tower
229 Peachtree Street, N.E.
Atlanta, Georgia 30303
(404) 659-6700 (telephone)//(404) 222-9718 (facsimile)
connell@elarbeethompson.com
lee@elarbeethompson.com
suarez@elarbeethompson.com
*Counsel for Plaintiff*